## OTTO v. YOUNG.

(Supreme Court, Appellate Term.    May 5, 1904.)

1. TRIAL—JURY—DELIBERATION—PRESENCE OF STENOGRAPHER.

    After a jury had retired, it was error for the court to permit the official stenographer who took the testimony to enter the jury room, in the absence of counsel for the parties, and there read to the jury the direct and cross-examination of plaintiff and defendant, the stenographer's notes not being evidence of the testimony recorded.

2. SAME—EVIDENCE.

    In an action for breach of a written contract of employment, the admission of defendant's stationery, showing plaintiff's name on the noteheads used in defendant's silk business, which had been abandoned by defendant, was erroneous.

Appeal from City Court of New York, Trial Term.

Action by Carl H. Otto against Bertram L. Young. From a judgment of the New York City Court in favor of plaintiff, and from an order denying defendant's motion for a new trial, he appeals. Reversed.

Argued before FREEDMAN, P. J., and LEVENTRITT and GREENBAUM, JJ.

Alfred Yankauer, for appellant.

Max D. Steuer, for respondent.

GREENBAUM, J.    This action was brought to recover damages for the breach of a written contract of employment, the defense being that plaintiff was justifiably discharged for arbitrarily refusing to comply with the reasonable orders of the plaintiff to undertake the sale of certain goods. When plaintiff was engaged as salesman the defendant's business was that of selling silk goods. At the time of plaintiff's discharge, the defendant had given up the sale of silk goods and gone into the muslin underwear, or, as it was also termed, the "white goods business"; and it was upon the alleged refusal on plaintiff's part to sell "white goods" that the defendant claimed that he discharged plaintiff. There was a decided conflict upon the facts between the parties. Plaintiff, uncorroborated, testified that the defendant gave him no directions whatever as to the sale of muslin or white goods, and that he had never refused to obey any direction of his employer. The defendant, on the contrary, testified unqualifiedly to the positive refusal of plaintiff to obey his instructions, and his testimony was unequivocally supported by that of his brother, his bookkeeper, and another employé. The jury, after it had retired to deliberate, sent a request to the court, asking "whether the plaintiff was sent on the road to sell white goods previous to January 17, 1903," the date of the discharge. The court thereupon sent for the jury, and stated that it re-

fused to answer the question, "but that it would have the plaintiff's direct and cross-examination and the defendant's direct and cross-examination read to them"; to all of which defendant's counsel excepted. The record on appeal shows that thereupon "the stenographer went into the jury room, and read the same [sic]," referring presumably to the stenographer's minutes. Among other grounds for reversal, defendant's counsel urges that it was error to permit the stenographer to read his minutes to the jury in the absence of counsel. It may be noted that general objection had been taken to the reading of the testimony, and that after the court's ruling upon this objection adverse to defendant, no special objection was interposed to the stenographer's retiring to the jury room to read from his notes. Was it error to permit the stenographer to enter the jury room and read his notes? Section 83 of the Code of Civil Procedure prescribes generally the duties of an official court stenographer, such as taking "full stenograhic notes of the testimony," noting the rulings of the court, and doing other matters; but there is no rule or law which makes a stenographer's minutes evidence of the testimony that he has taken down. It is a well-settled practice that a judge is not necessarily controlled by the stenographer's minutes in settling a case on appeal, although he may properly be very largely controlled thereby. Foster v. The Standard National Bank, 21 Misc. Rep. 8, 46 N. Y. Supp. 839. The testimony of a stenographer who relies upon his minutes has no greater legal force upon a trial or in a proceeding than that of any other witness as to the declarations and statements made by a party, albeit greater weight may be given to the stenographer's testimony than to that of one who merely depends on stray notes or memoranda, or upon recollection. Permitting a stenographer to enter the jury room, without the presence of the counsel, is in law the same as though any stranger were allowed to tell the jury his recollection of certain testimony given upon the trial. No one may be permitted to communicate with the jury during its deliberation—a rule equally applicable to the custodian of the jury, except that by order of the court he may ask if the jurors had agreed. Am. & Eng. Ency. of Law (2d Ed.) vol. 17, p. 1203. "It has always been the policy of the law to watch over the deliberations of the jury with great care, and scrupulously to guard them against any extraneous influences." Neil v. Abel, 24 Wend. 185. In the case just cited the minutes of the presiding justice were given to the jury, and it was held, citing Taylor v. Betsford, 13 Johns. 487, that the consent of the parties to their delivery to the jury could not be inferred, but must be made to appear affirmatively. In Moody v. Pomeroy, 4 Denio, 115, the court held:

"It is error for a justice of the peace before whom a cause had been tried by a jury to go into the jury room while the jury are deliberating, and give them instructions upon the evidence, without the express consent of the parties. It is not enough that they know he is going in, and do not object."

It is unnecessary to cite other authorities to the same effect, as in the case before us the objection raised to the reading of the minutes would negative any possible inference of a consent to their reading by the stenographer in the absence of the parties.

Mischief may result in acquiescing in a practice which will permit a

stenographer privately to read his minutes to the jury. The stenographer may not be absolutely accurate in essential points, or may have omitted some of the testimony, or he may give intonations or read his notes in such a way as not to fairly represent the testimony of the witness. Numerous cases are cited in Wiggins v. Downer, 67 How. Prac. 65, where private communications with a jury were held to be ground for reversal. Upon a precisely similar state of facts the Supreme Court of Iowa held it was error to have the stenographer sent to the jury room to read the evidence. Fleming v. Shenandoah, 67 Iowa, 505, 25 N. W. 752, 56 Am. Rep. 354. See, also, Padgitt v. Moll, 159 Mo. 143, 60 S. W. 121, 52 L. R. A. 854, 857, 81 Am. St. Rep. 347.

It is unnecessary to consider any other points raised upon this appeal, as it is apparent that reversible error was committed in allowing the stenographer to retire to the jury room without the presence of the parties. It is not incumbent upon the court to inquire whether the communication given to the jury by the stenographer was material, or had any influence upon the verdict of the jury. Kehrley v. Shafer, 92 Hun, 196, 36 N. Y. Supp. 510.

For the guidance of the court upon a new trial, it may be said that the admission of defendant's stationery, showing plaintiff's name on the noteheads used in defendant's silk business, was error, as it was wholly immaterial to the issues, and was calculated to convey an erroneous impression upon the jury. The peculiar effect upon a jury of what may appear to be harmless immaterial testimony, and the irrelevant circumstances that often influence them, are well illustrated in this case when the jury asked for information as to whether plaintiff was sent on the road by defendant to sell white goods previous to January 17, 1903, notwithstanding the learned trial justice in a clear charge had plainly instructed the jury that the defendant was bound under his contract to endeavor to sell, to the best of his ability, such merchandise as the defendant directed him to sell.

The judgment must be reversed, and a new trial ordered, with costs to appellant to abide the event.

FREEDMAN, P. J., concurs.

LEVENTRITT, J. (concurring). I concur on the ground that it was improper to allow the stenographer to enter the jury room.

