Edward J. McCullen, J.
The petitioner, who is presently an inmate of the New York State Prison at Auburn, New York, brings this motion for a resentence, nunc pro tunc, as of October 16, 1930 (the date on the court records is Oct. 14, 1930), on two chief allegations. One is that the clerk of the court did not comply with section 480 of the Code of Criminal Procedure of the State of New York and the other, that the then court was not justified in imposing an additional sentence under section 1944 of the Penal Law. The instant motion was returnable on October 2, 1956, and a hearing was had at which the petitioner was present, he having been ordered from Auburn by another judge of the court. After hearing counsel for the petitioner on the motion and the District Attorney of the County of New York in opposition thereto, decision was reserved. On October 16, 1956, after having examined the book records of Part III of the court, for October 14, 1930, I filed an interim opinion, directing counsel for both sides to examine those records and to appear at Part I of the Court of General Sessions on October 24, 1956.
On that date counsel for both sides and the petitioner were present. After hearing- counsel on what was then necessary, I reserved decision on the motion and on October 26,1956, directed that the petitioner be returned to the custody of the Warden of the State Prison.
The motion of the petitioner is addressed to the judgment of sentence imposed on him by the Honorable Cornelius F. Collins, then a Judge of the Court of General Sessions, on October 14,1930, on his plea of guilty, on September 25, 1930, of robbery in the second degree while armed with a pistol, to cover four indictments. The judgment was as follows: “ The sentence of the Court is that on the robbery case, to cover 3 indictments, not less than seven and a half years nor more than fifteen; and an additional sentence for the possession of the gun as is mandatory, by the Statute — being armed while committing a crime — not less than five nor more than ten years so that the total sentence would be not less than twelve and one-half years nor morp than twenty-five ”. Note the sentence states “ to cover 3 indictments ”. There were actually four indictments, as set forth in the indorsement on Indictment 183097 on September 25, 1930, by the clerk of the court. The petitioner is recorded as having gone to the New York State Prison ip October, 1930, and to have *1051 served therein until December, 1939 (nine years and two months), when he was paroled. Thereafter, while on parole, he was convicted of the crime of armed robbery in the State of Connecticut and sentenced, on January 6, 1953, to State Prison for a term of not less than 3 years to not more than 15 years. On July 26, 1955, he was released from the Connecticut State Prison, and was surrendered to the New York State Prison authorities as a parole violator. He has since been in the New York State Prison.
On October 14, 1930, section 1944 of the Penal Law, was such that it was mandatory on the court to impose the additional 5 to 10 years for the possession of a gun in a robbery, especially since the present petitioner had pleaded guilty, on September 25, 1930, of the crime of robbery in the second degree while armed with a pistol, to cover four indictments. The statute has, of course, been since amended by chapter 53 of the Laws of 1936. In the indictment in our present case [183097], there are four counts. Count one alleges the crime of robbery in the first degree, while armed with a loaded pistol; count two alleges the crime of assault in the first degree, with “ a certain pistol then and there loaded and charged with gun powder and one metal bullet ”.
There having been a plea of guilty to robbery in the second degree, while armed, on September 25, 1930, there was no necessity for a hearing to determine if the petitioner was armed (People ex rel. Bai v. Brophy, 259 App. Div. 1067, affd. 286 N. Y. 585). The defendant’s contention to the contrary is devoid of merits.
The defendant’s remaining contention, directed toward the alleged failure of the clerk to adhere to the requirement of section 480 of the Code of Criminal Procedure, requires somewhat more extended discussion. Section 480 states as follows: “ When the defendant appears for judgment, he must be asked by the clerk whether he have any legal cause to show, why judgment should not be pronounced against him.” It was a new section added by chapter 442 of the Laws of 1881, and remains unchanged to date. Instead of counsel for the petitioner having spoken at length for him, as the stenographic record of October 14, 1930, shows he did, and, had the petitioner spoken for himself on that date, can one believe the petitioner would have denied, on October 14, 1930, that he was armed during the robbery referred to, when he had pleaded guilty to it about 20 days previous? Would he have moved to have the plea of guilty, as entered, be set aside and then enter a plea of not guilty to the *1052 allegations in all four indictments and proceed to trial thereon? I set forth these queries because of the allegations in the application for resentence and very specially so because of the excellent manner in which the then counsel for the petitioner appealed to the court for consideration for the petitioner and implored it to send the petitioner to a reformatory instead of a prison. After defendant’s admission of his guilt while armed, in his plea on September 25, 1930, there was no need for counsel to inform him of the court’s power to hold a hearing to determine whether defendant was armed. Nor can we, 26 years later, look into what the defendant intended by his plea of guilty, absent any indication of fraud or duress in obtaining the plea.
The transcribed stenographic record of October 14,1930, with B. Reiss, Esq. (actually Bernard Reiss, Esq.), speaking for the then defendant, is as follows: ‘ ‘ Mr. Reiss: The defendant, Sheehan, is a mere boy and because of the employment situation in New York to-day he was unable to secure employment. He got into bad company and that led him to believe that he could make easy money. He has since found out that crime does not pay. If he were to be sent to an institution the court must add five years for the possession of a revolver. I think that society will be better benefited if a boy of this type could be sent to an institution where he could be learned a trade or taught a trade and when he came out he would be able to do something to leave society alone. The Court: Your statement is no doubt true but the fact with regard to this boy is that he has broken down every possible restraint to control him that has ever been exercised. Every charitable organization has tried to help. The institutions have tried to make a man out of him. He has broken through their restraint and he is an enemy to society. He is a potential murderer, he is a dangerous character. He was leading other boys astray. They were following him. True he had an unfortunate upbringing. No proper guardianship and his surroundings were not good. He was placed in an institution, and then taken out of there and taken to the Mission of the Immaculate Virgin, that is at Mount Loretta, Father Drumgoole’s place. Then an effort was made to rehabilitate this fellow but they could not do it. He was out again only a short time. Of course he was not responsible for the improper guardianship but there are many things in his individual conduct that he is responsible for. He was in the Children’s Court as a disorderly child and placed on probation. Then the probation department tried to take him in hand and tried to impress upon him — that he ought to be a good boy. A short time afterwards he was convicted of unlaw *1053 ful entry and Judge Allex sent him to the House of Refuge. The House of Refuge could not do a thing with him. Now all of these efforts have been made to try and train the boy, all reformative methods, but they were not conducive of any good. He has been in the House of Refuge. Undoubtedly he is criminally inclined. He is a ready victim to any suggestion of crime. He is the type of hold-up man that is dangerous, where he would go out and would not hesitate to shoot if there was occasion for it. He stole an automobile and a policeman caught him. These boys deliberately go in and hold up a garage. Sheehan is caught with a gun and he said he never had any gun. But they were caught red-handed. This defendant is under four indictments in this Court and he was allowed to plead guilty to one to cover four. The only consideration that can be given him would be to consider whether or not this is a reformatory case. How could it be a case for reform when every effort at reform was made. They have all tried it on this boy and they have not succeeded in doing anything for him. He is so dangerous to those he comes in contact with that it is alarming. Now the law fixes the minimum sentence for robbery in the second degree at fifteen years. Mr. Reiss: That is the maximum? The Court: And it requires an added sentence of five years for the possession of firearms, because he has pleaded guilty as being armed with a gun and that sentence of five years has to be added. Mr. Reiss: Unless it is an Elmira sentence. The Court: Now I have a great deal of sympathy for boys, as you know, but one cannot permit the law, in the administration of justice, to be maudlin. This boy has got to go to state prison. There is only the question of the length of the sentence with the addition of the five years. Mr. Reiss: If the court please, I sincerely believe that the exemplary methods used at Elmira will be better for this defendant. The Court: This defendant would think he got away with something if he was sent to Elmira. He would think he simply put it over again. He has got to know now that he cannot defy the law. lie has got to be taught that the administration of justice means something. We cannot let a boy go around with a gun in his hand ready to kill. He is entitled to consideration as a first offender. The sentence of the Court is that on the robbery case, to cover three indictments, not less than seven and a half years nor more than fifteen; and an additional sentence for the possession of the gun as is mandatory, by the statute — being armed while committing a crime — not less than five nor more than ten years so that the total sentence would be not less than twelve and one half years nor more than twenty-five.”-
*1054 It is agreed that the sentencing stenographic records do not show that the clerk of the court did address the question required by section 480 of the Code of Criminal Procedure to the then defendant in the form required by the statute, at the time of sentence on October 14, 1930. In examining those minutes I note the stenographer dated them as of October 16, 1930, which is an error. The true date was October 14, 1930. I note also that the stenographic record starts out with the counsel for the then defendant addressing the court in the interest of the defendant. Could it be that the stenographer failed to include the start of the proceedings in his typed copy. To start them in the manner shown in the stenographic record is unusual. “ The minutes of the stenographer are entitled to great weight, but they are not conclusive ” (Otto v. Young, 43 Misc. 628, 630; cited in People v. Buccufurri, 154 App. Div. 827). I have endeavored to locate the record of the stenographic notes but was not successful. The stenographer has long since gone to his eternal reward.
In my interim opinion I referred counsel of both sides to the minutes kept by the clerk of Part III, of the Court of General Sessions for October 14, 1930. Therein I find, as of: “Tuesday Morning October 14, 1930. Hon. Cornelius F. Collins, Judge of the Court of General Sessions. People v. Stefano Speranza. On Conviction by Confession of Petit Larceny (Pt. 9 Feb. 6, 1929) Ind. filed: Dec. 17, 1928 No. 1754444 The defendant having nothing further to say — Ordered by the court that Sentence be suspended and the defendant and the surety severally discharged from their undertaking to answer Probation two years. The next two entries show that the Court imposed sentence upon two others. The clerk recorded the happenings in the same form as above but used abbreviated language substituting the phrase ‘ The Like by the Like ’ for the words On Conviction by Confession and using ‘ The like as to ’ in place of the words The defendant having nothing further to say.” The clerk again used abbreviated language in the fourth sentence of that morning as appears on page 181: People, &c., v. John Sheehan, Daniel Kelly, Patrick Higgins. “Like Severally by the Like — of No. 1. Sheehan (Robbery second degree, armed to cover four cases). No. 2. Kelly (Robbery second degree not armed to cover three cases). No. 3. Higgins (Robbery third degree to cover three cases). Ind. filed: September 16, 1930, No. 183097. The like as to each Judgment as to Sheehan State prison at hard labor for the term of not less than Seven years six months nor more than Fifteen years. The above sentence shall be increased by impris *1055 onment in state prison for a Term of not less than Five years nor more than Ten years as provided by section 1944 of the Penal Law.” Judgment as to Kelly: “No appeal was ever taken from the judgment of conviction. ’ ’
The manner of keeping the daily books of each part of the court, as shown from the reference to the entries made on October 14, 1930, at Part III, is that which was the then directed order of the then board of judges of the court. I am so informed by the new deputy clerk of the court, who was the clerk of Part IX of the court in October, 1930, and I have been shown the same record in other court clerk’s books.
After the extensive colloquy between counsel for the petitioner and the then court in the presence of the petitioner, on the day of sentence and the definite manner in which counsel pleaded to have the court sentence the petitioner to Elmira instead of the State Prison, it would seem that the petitioner was satisfied to have his counsel speak for him and that he would not have more to say than a negative response. The calendar of Part III, of the Court of General Sessions, for October 14, 1930, consisted of one motion, seven cases on the Trial Calendar and eight sentences (see N. Y. L. J., Oct. 14, 1930, p. 238, cols. 3, 4). In my opinion that was a small calendar.
For the purposes of this opinion, however, whether or not the clerk asked the defendant anything before sentence, is deemed to be immaterial. Assuming that the stenographic minutes represent a complete and accurate account of what transpired on the day of sentence, and therefore that nothing was said by the clerk, this court fails to see any violation of the defendant’s rights as would warrant the relief presently demanded.
True, section 480 of the Code of Criminal Procedure makes it mandatory for the clerk to put the pertinent question to the defendant before sentence. But the intent of that section is to afford the defendant the right and the opportunity to be heard (see Messner v. People, 45 N. Y. 1, 5; People v. Nesce, 201 N. Y. 111, 114), and in the instant case, that right and opportunity were fully availed of by the earnest plea of defendant’s counsel. The defendant’s rights having been amply protected, no purpose would be served in upsetting the judgment of conviction to accord him still another opportunity to be heard.
Careful consideration of the applicable cases relied upon by the defendant does not constrain a contrary view. For aught that appears, none of them contain a fact situation apposite to the case at bar (see, e.g., Messner v. People, supra; People v. Nesce, supra; People v. Canepi, 181 N. Y. 398; People v. Faber, 199 N. Y. 256; People v. Craig, 295 N. Y., 116; People ex rel. *1056 Miller v. Martin, 1 N Y 2d 406; People v. Dalton, 205 Misc. 755). In People ex rel. Miller v. Martin (supra), for example, apart from the clerk’s alleged failure to utter the words of section 480, the defendant’s attorney not only attempted to withdraw as counsel on the day of sentence, requesting an adjournment for the defendant so that the latter could obtain new counsel, but he also intimated that the defendant was insane. The sentencing court proceeded nonetheless to impose sentence that very day. Under those circumstances, the Court of Appeals properly held that the defendant had been denied the last opportunity of speaking for himself (p. 411), citing People v. Nesce and Messner v. People (supra).
Not so in the case at bar, however. Here the defendant was afforded this last opportunity and while the procedure may have left something to be desired, the defendant is not entitled to have the judgment of conviction set aside at this late date. To hold otherwise, and decree that any deviation, whatsoever, from the procedural formula prescribed in section 480, vitiates a judgment of conviction for all time, would be to exalt form over substance.
While we should demonstrate our respect for judicial tradition, yet we should not fail to recognize the law as an instrument for social advancement. Our purpose should be toward the fearless search for truth rather than artificiality. We should ground our thinking in facts and so state the intent of the law.
The motion is accordingly denied in all respects.
The District Attorney is directed to enter an order in accordance with the decision herein rendered and to forward a certified copy of said order to the petitioner and his attorney.