Fuchsberg, J.
The issue is whether an indigent defendant who, because he was originally not advised of his right to appeal, has been resentenced nunc pro tunc so as to recommence the running of his time to appeal, is entitled, under the special circumstances in this case, to a new trial where a transcript of the original trial minutes is unobtainable and no alternative sources for perfecting his appeal or for demonstrating appealable issues any longer exist.
In 1953, following a full trial, the defendant, Luis Rivera, then represented by court-appointed counsel, was convicted and sentenced for having sold a quantity of marijuana equal to less than 10 cigarettes in violation of the Public Health Law. Neither at the sentencing or postsentencing proceedings was he ever made aware of his right to appeal. He first learned of it many years later when, on the occasion of a second conviction, he was sentenced to 10 to 15 years in prison, a far greater penalty than the one which could have been imposed had he not been a second offender (Penal Law, § 70.06). By then the statutory time within which he would have been required to file a notice of appeal was long gone (Code Crim Pro, §§ 521-524, re-enacted as CPL 460.10).
Thereafter, Rivera applied for a writ of error coram nobis, basically on the grounds advanced in People v Montgomery (24 NY2d 130). Following a tortuous series of motions, he succeeded in obtaining a judicial determination that he had in *522 fact never been advised of his right to appeal his 1953 conviction and that, as a result, now in 1973, he was entitled to be resentenced nunc pro tunc so as to permit his time to appeal to run anew. However, after the resentencing, when he sought to pursue his newborn right, he found himself stymied by the discovery that no transcript of the minutes of thé trial or sentencing could be found, a fact which the People concede.
Accordingly, asserting that the Appellate Division would, therefore, find it impossible to review the proceedings, Rivera moved in that court for summary reversal of the 1953 judgment. The Appellate Division did not decide the motion immediately, but first referred the matter to the Supreme Court, Kings County, for a hearing and report as to what appealable issues, if any, there were in the case. The Supreme Court Justice who heard the evidence on that question reported that Rivera had failed to establish the existence of such issues, and, on that basis, the Appellate Division thereupon denied defendant’s motion to disaffirm the report. Nevertheless, on direct appeal, it reversed the original judgment of conviction and ordered a new trial. The People now appeal from that order. For the reasons which follow, there should be an affirmance.
In New York State, every defendant has an absolute and "fundamental right” to appeal a conviction (People v Montgomery, 24 NY2d 130, 132, supra; see, also, CPL 450.10). The denial of that right constitutes as much a failure of due process as would the denial of the right to a trial itself, and, where its denial or serious obstruction comes about because of poverty, it constitutes a denial of equal protection as well (Griffin v Illinois, 351 US 12, 18; People v Montgomery, supra, p 134).
A stenographic transcript of the proceedings is, of course, an invaluable aid to the prosecution of most appeals. This is all the more so when an appeal follows a trial at which testimony was taken. Without it, a reviewing court may be unable to provide the review of a conviction that a defendant is entitled to receive. Thus, where it would serve to better present the appealable issues, a defendant may not be denied the use of a transcript simply because he does not possess the means to secure it (People v Pride, 3 NY2d 545; Griffin v Illinois, supra; Eskridge v Washington Prison Bd., 357 US 214 [making Griffin applicable to the States]).
*523 However, a stenographic transcript is not necessarily the only effective way to present the issues on appeal in a particular case. It may, for instance, be possible, for the purpose of appeal, to adequately reconstruct the proceedings at trial and at sentencing by a narrative bill of exceptions based on agreement on the underlying facts and legal issues by counsel, or by counsel and the court, or by resort to other available sources. (Griffin v Illinois, supra, at p 20, n 17 [Black, J., for the majority], p 32 [Harlan, J., dissenting]; cf. People v Boulware, 29 NY2d 135). Appeals were perfected, heard and justly determined with the aid of such other devices long before modern stenography and the stenotype machine arrived on the scene. (See Re, Brief Writing and Oral Argument, [4th ed], pp 58-59.)
Thus, while a defendant should have as fair an appeal as possible, and while, if the use of available minutes would aid in assuring it, he is entitled to have their assistance, unless they have become unavailable because of any active fault on the part of the People, it does not necessarily follow from the fact that their absence compels resort to a less perfect record, that the right to appeal must be deemed to be frustrated. For, in this imperfect world, the right of a defendant to a fair appeal, or for that matter a fair trial, does not necessarily guarantee him a perfect trial or a perfect appeal. (Cf. People v Bowden, 48 AD2d 962; People v Colon, 43 AD2d 676; People v Hicks, 85 Misc 2d 649.)
In such circumstances, a hearing to determine, among other things, the availability of means other than a transcript for the presentation of the appealable and reviewable issues, may be desirable. Such a hearing may also be directed to determining such other matters as the adequacy of the substitute means and the presence of the issues themselves, if any, the last indeed being the more limited purpose for the reference by the Appellate Division in the present case.* Since such a hearing treats with what are essentially factual matters, we believe it would be useful to summarize the pertinent facts here, both those developed on the single issue heard on the reference to the Supreme Court Justice and those others *524 which were also before the Appellate Division when it reversed on direct appeal. They are undisputed.
Firstly, Rivera himself is completely unable to help reconstruct the testimony of the trial which took place 23 years ago, much less relate the evidentiary or legal issues that arose at that time. That inability is not because of the long passage of time alone. Possessed of no knowledge of English at all, he relied completely on an interpreter when he took the stand. There is no indication that any effort was made to overcome his language barrier by providing him with intelligent information as to what was taking place at any other point in the proceedings. It would in fact be contrary to usual court practice for an interpreter to be provided for that purpose. Also, as a complicating aftermath of shock treatments administered under the supervision of the prison authorities immediately after his incarceration for the conviction at issue, here, he suffers from a complete retrograde amnesia of the trial as well as of other previous major events in his life.
The opposing counsel at trial, their records and their recollections, therefore become all the more vital. Yet they are no more able to fill the vacuum than is the defendant. The prosecuting attorney’s memory, even were we to assume that it might otherwise have continued to serve him after this long, lapse of time, has been undermined by an unfortunate paralytic stroke. Rivera’s attorney, who departed his client’s cause without even advising him of his right to appeal, much less taking any step to preserve it, has since been disbarred and cannot be located. The fact that he was court appointed because Rivera was poor is not without significance (cf. Norvell v Illinois, 373 US 420).
Finally, the Judge who presided at the trial is deceased. And no other possible sources for the reconstruction of the issues are suggested by either party.
These facts, especially in combination, of course had to have resulted in the confirmed finding that Rivera was unable to demonstrate the existence of appealable and reviewable issues. But they also had to have established to the satisfaction of the Appellate Division, as they evidently did, that, without a transcript, it is impossible in this case either to establish that there were or were not in fact such issues, or, if there were, to present them on appeal.
Under these unusual circumstances, the presumption of regularity which ordinarily attaches to judicial proceedings *525 (People v Richetti, 302 NY 290, 298) does not avail the People here. That presumption, like all presumptions except those which have been made conclusive by the Legislature as a matter of substantive law (see 9 Wigmore Evidence [3d ed], § 2492; Richardson, Evidence [10th ed], § 56), is but a rule of evidence based on experience. To shift the burden of its rebuttal to one who, by unchallengeable facts, has proved that he has been rendered unable to present such evidence for reasons beyond his control would be to subvert its purpose. That is why evidentiary principles make allowance for the interposition of amnesia and like barriers to the presentation of proof. (Cf. Amnesia-Criminal Capacity, Ann., 46 ALR3d 544; Noseworthy v City of New York, 298 NY 76; Schechter v Klanfer, 28 NY2d 228 [civil cases].)
Further, the presumption of regularity may also be considered less demanding since Rivera went through a full trial, with all the greater possibilities for appealable issues that would follow, than would have been the case had he pleaded guilty so that only the sentencing proceedings would be up for review (cf. People v Bell, 36 AD2d 406). Especially is this so since the order vacating the sentence established that Rivera himself was not at fault in losing his original right to appeal.
It is noteworthy too that, though this is not a case where there is any claim that the State, by affirmative or negligent conduct, has been the active and effective cause of prejudice to the defense, in which event there would have to be a reversal at least on grounds of fairness (cf. Brady v Maryland, 373 US 83), the minutes in the present case are unavailable not for a cause such as destruction beyond the control of either party, but because of the long delay in informing Rivera of his right to take appeal and to promptly secure the minutes for that purpose. That not only " 'seriously impeded his right to a fair [appeal]’ ” (United States v Augenblick, 393 US 348, 356), but also was a reason directly related to the conduct, though passive, of the People.
As this court has said, "There is no question that the primary duty of furnishing legal advice to indigent defendants is a State responsibility. Either by permitting assigned counsel’s role to terminate at the end of trial, or failing to provide safeguards against lack of information, the State permitted a critical time period to lapse of which the defendant was unaware” (People v Montgomery, 24 NY2d 130, 133, supra; cf. People v Adams, 12 NY2d 417; People v Hairston, 10 NY2d *526 92; People v Mininni, 21 AD2d 811; People v Dominick, 68 Misc 2d 425).
Accordingly, the order should be affirmed.

 We note that a number of other States have followed a similar course (see Bauerlien v Warden, 236 Md 346; Hemsley v Warden, 2 Md App 603; House v United States, 234 A2d 805 [DC]; Whetton v Turner, 28 Utah 2d 47, cert den 414 US 862; State ex rel. Le Blanc v Henderson, 261 La 315; Pisani v Warden, 289 F Supp 232; People v Carson, 19 Mich App 1).