THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES CARNEY, Appellant.

First Department, February 26, 1980

### APPEARANCES OF COUNSEL

*William H. Roth* of counsel *(William E. Hellerstein,* attorney), for appellant.

*Jerrold L. Neugarten* of counsel *(Carol Ethridge Gette* with him on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

### OPINION OF THE COURT

SILVERMAN, J.

This is an appeal from a judgment of the Supreme Court, New York County, convicting defendant on his plea of guilty of attempted criminal possession of a weapon (Penal Law, § 110.00, former § 265.05), and sentencing him thereon as a

second felony offender to an indeterminate term of imprisonment from 1½ to 3 years. Execution of the sentence has been stayed pending appeal.

Before the plea of guilty, there had been a motion to suppress physical evidence, a hearing on that proceeding before Justice ASCIONE of the Supreme Court, and a decision by Justice ASCIONE denying the motion to suppress. Defendant wishes us to review that denial.

Unfortunately no stenographic record of the suppression hearing was available, and, accordingly, we directed an effort to reconstruct that record. The case is now before us on the record of that attempted reconstruction.

It appears that police officers arrived at the scene of a robbery reported to be "in progress" by the police dispatcher. The owner of the store had just been shot. As one of the police cars was on its way back to the police station, another car came up and sounded its horn and the driver said something to the police officers about two men (one of whom turned out to be the defendant), who were said to have gone into a bar and grill across the street from the scene of the robbery. As a result of that conversation, the police officers went into the bar and grill; the police officers had their guns drawn; they "patted down" two men (one of them the defendant) thus discovering that the defendant had on his person a loaded revolver.

At the reconstruction hearing, the police officer said he had testified that the driver had told him that the two men looked "very suspicious"; and that the driver of the informing car had accompanied the police officers into the bar and pointed out the two men. The police officer was not permitted to state his present recollection of the events but only his recollection of his testimony at the suppression hearing.

The defendant's attorney testified that his recollection was that the officer had testified that he was told by an unidentified individual that the two men who had robbed the liquor store were across the street in the bar and grill; that no description of the men was given; that the officers were not accompanied into the bar by the informant; nor did the informant point out the defendant.

Justice ASCIONE submitted an affidavit, prepared before the reconstruction hearing, to the effect that the police officers testified that they had received a report that two men with a gun were either standing outside of or going into a particular

bar, and that one of them was wearing a jacket of a specific color. The police entered the bar and saw the defendant wearing the described garment. The defendant and the men standing with him were arrested and searched and a handgun was found on the defendant. Justice ASCIONE said he had found the testimony of the police officers credible.

In a number of recent criminal appeals we have been confronted with the problem of attempting to reconstruct a record where an adequate stenographic transcript of the hearings in the trial court is not available. "[A] hearing to determine, among other things, the availablility of means other than a transcript for the presentation of the appealable and reviewable issues, may be desirable. Such a hearing may also be directed to determining such other matters as the adequacy of the substitute means and the presence of the issues themselves, if any". *(People v Rivera,* 39 NY2d 519, 523; see, also, *People v Glass,* 43 NY2d 283, 286.)* Such hearings have apparently become the practice in efforts to reconstruct a record.

In the present case, the "reconstruction hearing" was held not before Justice ASCIONE who held the original suppression hearing but before another Judge. At that reconstruction hearing, as we have said, the police officer and the defendant's attorney testified as to what the testimony before Justice ASCIONE had been. The original Trial Judge, Justice ASCIONE, was temporarily unavailable and an affidavit was submitted from him to the "reconstruction court" as to his recollection. So far as appears, there was no effort to arrive at an "agreement on the underlying facts and legal issues by counsel, or by counsel and the court". *(People v Rivera, supra,* at 523.) More importantly, there was no effort made to refresh Justice ASCIONE's recollection by testimony, conversation, notes, etc., from the other participants in the hearing, nor did Justice ASCIONE make a final determination as to the record, or take charge of the proceedings. He merely gave his unaided recollection in affidavit form.

Thus we have the transcript of a reconstruction hearing which contains varying recollections of the witnesses as to what took place at the original suppression hearing, with no finding by anyone as to what the testimony was at the suppression hearing. The differences in the recollections of the various witnesses as to what took place at the suppression hearing are important, and some of us think that they may be determinative of the case.

We are thus faced with a basic question of procedure in such reconstructions of the record—specifically, who, if anyone, takes charge of the proceedings and who "settles" the record, at least where there is no agreement among the parties or their recollections differ. In my view, so far as possible the final arbiter of the record should be the Judge who presided at the original proceeding sought to be reviewed, if he is available. At a minimum, he should take charge of the reconstruction proceeding. In such a proceeding he is not merely, or not at all, a witness; he is the official who certifies to the appellate court—if he can—what took place before him.

Historically, it was always the Trial Judge who had the final responsibility for certifying the record. We have grown accustomed in this country to stenographic reporting of proceedings; but there were appeals long before there were verbatim transcripts of testimony. (*People v Rivera,* 39 NY2d, *supra,* at 523.) The stenographic transcript is merely an aid to the Judge in certifying the record. Of course in the vast majority of cases the parties do not question the stenographic transcript and thus there is no need for the Judge to certify the record. But when, as here, the stenographic transcript is unavailable or inaccurate, the Trial Judge retains the ultimate responsibility for certifying the accuracy of the record.

The statutes and cases leave the ultimate responsibility for settling the record and transcript with the Trial Judge. (See CPLR 5525, subds [c], [d]; Rules of Appellate Division, First Dept, 22 NYCRR 600.5 [e].) Indeed, even after a Judge *is* no longer in office he may be compelled to settle a transcript or record on appeal. (Judiciary Law, § 7-a; *People v Stein,* 104 NYS2d 603; *Knobloch v Taube,* 53 Misc 543.)

The subsidiary nature of the stenographer's minutes is also reflected in the historical reference to motions for a new trial "made upon his [the Judge's] minutes." (See Civ Prac Act, § 549.)

In *People v Buccufurri* (154 App Div 827) there was a dispute as to whether an exception had been taken to a certain ruling. The Trial Judge struck the recitation in appellant's proposed amendment to the case on appeal (or transcript or record, as we more commonly call it today) showing such an exception for the reason that the stenographer's minutes showed no such exception. The court said *(supra,* at 828-829): "A party to an appeal is entitled to have his case show the facts as they really happened on the trial, and

should not be prejudiced by an error or an omission of the stenographer. The duty is upon the trial judge to pass upon the accuracy of the record. The minutes of the stenographer are entitled to great weight, but they are not conclusive. *(Otto v. Young,* 43 Misc. Rep. 630; *McCready v. Lindenborn,* 24 id. 606.)* The responsibility of settling a case is upon the trial judge. His notes and recollection of what occurred, and any other means which may satisfy him, must prevail, and while he may be aided by the stenographer's minutes, he ought not to rely upon them alone." Because the Trial Judge had apparently treated the stenographer's minutes as conclusive, the Appellate Division reversed the order denying the motion to resettle the case and remitted the matter to the Trial Justice for resettlement saying *(supra,* at 829): "It is beyond our power to dictate as to how a case should be settled, and we do not presume to do so, but we cannot assume that the ruling was based upon the personal recollection of the trial justice, refreshed or aided by other means, in view of the record before us."

Appellate courts should defer to the Trial Judge as to what happened before him, perhaps particularly in a matter "concerning which the judge had personal knowledge and on which the affidavits of the attorneys for the respective parties are in conflict." *(Bunke v New York Tel. Co.,* 110 App Div 241, 243, affd 188 NY 600.)

I therefore think that the procedure followed in the present reconstruction hearing was erroneous. It treated the Trial Judge, Justice ASCIONE, as merely a witness. Neither Justice ASCIONE (nor even the "reconstruction Judge") made any findings as to what the testimony at the original suppression hearing was. No judicial officer took charge of the proceedings other than formally to preside at the hearing.

The matter should be remitted to Justice ASCIONE for him to reconstruct, as best he can, the record of the proceedings before him on the original suppression hearing with whatever assistance or agreement he can get for this purpose.

We need not now consider what procedure we will adopt in the event that it should develop that Justice ASCIONE's best efforts do not result in an adequately reconstructed record. But at a minimum, we should have his aid *after* he has considered the recollections of the attorneys and of the witnesses and any other available aids.

Moreover, in the event that a witness is unable at the

reconstruction hearing to recall what he said at the prior suppression hearing but is able to recall the facts of the alleged unlawful seizure, the court should permit the witness to testify as to the facts of the incident as he remembered them, at least as some indication of what the witness probably testified to at the suppression hearing. This would apply particularly to the testimony of Officer Morris who was precluded from testifying as to his clearer recollection of what happened at the time of the criminal incident as distinct from his less clear recollection of what he had testified to at the suppression hearing.

The appeal should be held in abeyance and the matter remitted to Justice ASCIONE for reconstruction of the record in accordance with this opinion.

Ross, J. (dissenting). I dissent and would affirm the judgment of conviction.

Defendant entered a plea of guilty after his motion to suppress physical evidence was denied. The minutes of the suppression hearing were never transcribed, and a hearing to reconstruct was thereafter held. At this latter hearing, Officer Morris, the arresting officer, who was the sole witness at the suppression hearing, recalled that he and his partner were returning to the station house after responding to a radio call of robbery in progress in which the owner of a liquor store had been shot. One block from the crime area an unidentified motorist informed the officers that "two very suspicious men" had entered a bar across the street from the robbed liquor store. The officers, accompanied by the informant, proceeded to the bar, where the informant entered and identified the defendant and a companion. The police with guns drawn, frisked the defendant and retrieved a handgun. Nothing was found on defendant's companion. The two suspects were thereafter presented to the injured store owner who could not identify them as the assailants.

Defendant's trial attorney recalled there was no testimony as to the informant entering the bar. However, he remembered the officer's testimony to be that the motorist advised the police "the two men who held up the liquor store were across the street in a bar and grill".

The Trial Judge, who also retained no memoranda of the suppression hearing, by affidavit averred that there was testimony that one of the suspects was reportedly wearing a jacket

of a specific color. The defendant, when seized, was wearing similar apparel.

On any version of the above testimony, the police could reasonably infer that the defendant had committed a felony and, knowing the proprietor of the premises had been shot, were authorized to frisk. *(People v De Bour,* 40 NY2d 210, 233; *People v Green* 35 NY2d 193.) Moreover, it cannot be said that their conduct was not reasonably related to the attendant circumstances. *(People v Cantor,* 36 NY2d 106, 111.)

Accordingly, the judgment should be affirmed.

SULLIVAN, J. P., LUPIANO and YESAWICH, JJ., concur with SILVERMAN, J.; ROSS, J., dissents in opinion.

Determination of appeal from judgment, Supreme Court, New York County, rendered on February 25, 1976, held in abeyance and the matter remitted to Justice ASCIONE for reconstruction of the record in accordance with the opinion of this court filed herein. Appellant's request for leave to file a supplemental record is denied.