People v Meyers

2026 NY Slip Op 03261

May 26, 2026

Court of Appeals

Wilson, Ch. J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

The People & c., Respondent,

v

Joseph A. Meyers, Appellant.

Decided on May 26, 2026

No. 44

David M. Abbatoy, Jr., for appellant.

Victor D. Rowcliffe, for respondent.

Wilson, Chief Judge

[*1]

During the trial of Joseph A. Meyers, the primary stenographer failed to capture substantial portions of the proceedings and frequently recorded "blah blah blah," "blah blah," "omitted," "untranscribable" or undecipherable characters instead of the words actually spoken. Those transgressions by the court reporter were first discovered during the pendency of Mr. Meyers's appeal. The Appellate Division ordered a reconstruction hearing, at which Supreme Court took testimony from the trial judge who heard the case, the attorneys who tried it and court clerks who helped administer it, and also supplemented the record with the extensive notes the judge took during the trial. Although Supreme Court did not, at the conclusion of the reconstruction hearing, identify the contents of the reconstructed record, the Appellate Division affirmed Mr. Meyers's convictions based on the original trial record as supplemented by the proof established at the reconstruction hearing. The core issues before us are: (1) whether the Appellate Division appropriately ordered a reconstruction hearing instead of summarily reversing Mr. Meyers's criminal convictions and ordering a new trial; and (2) if the Appellate Division properly required a reconstruction hearing, whether that hearing produced a record sufficient to protect Mr. Meyers's right to an appeal that comported with due process. Although the transcript prepared by the court reporter at trial is utterly inexcusable, we affirm the Appellate Division's holding that, on the unique facts of this case, the results of the reconstruction hearing were sufficient to protect Mr. Meyers's right to an appeal.

I.

In the early morning of February 15, 2016, flames engulfed David O'Dell's home. Firefighters recovered Mr. O'Dell's body inside, and an autopsy indicated that Mr. O'Dell died in the fire. Mr. Meyers and his wife Iryn, Mr. O'Dell's neighbors, were quickly suspected of orchestrating the fire. Iryn had purchased a remainder interest in Mr. O'Dell's home two months prior and was living in his basement. Iryn had also purchased a life insurance policy on Mr. O'Dell shortly before the fire. Video footage from the Meyers's home and location data from their cell phones showed them traveling to and from Mr. O'Dell's home multiple times on the night of the fire. Mr. Meyers also made inconsistent statements to police and fire investigators soon after the fire.

Both Mr. and Mrs. Meyers were indicted on multiple charges of murder, arson and fraud. After a jury trial, Mr. Meyers was found guilty of one count of murder in the first degree, one count of murder in the second degree, two counts of arson in the first degree, three counts of falsifying business records in the first degree, one count of attempted insurance fraud in the second degree and one count of conspiracy in the fourth degree. The court imposed an indeterminate sentence of 23 years to life on the first-degree murder charge, to run concurrently with his sentences on the other counts.

Mr. Meyers's appellate counsel learned that significant portions of the record were missing and other parts were peppered with words or symbols that did not accurately reflect the proceedings. The trial's primary stenographer had also typed scores of variations of "blah blah blah," "(omitted)," "(untranscribable)" or unintelligible stenographic characters instead of the words actually spoken. The missing content included three full days of jury selection (Trial Days 2-4), the opening statements (Trial Day 5), one full day that included jury deliberations, jury notes and the verdict (Trial Day 13), and most of one day that included the charge conference, summations and jury charge (Trial Day 12). Although the rest of the proceedings were transcribed, the mistranscribed or untranscribed portions of the transcript included substantial portions from the first day of jury selection (Trial Day 1), as well as portions of testimony from witnesses during Trial Days 6 and 8. Mr. Meyers moved for summary reversal and a new trial. The Appellate Division instead held the appeal in abeyance and remitted with instructions to conduct a reconstruction hearing "with respect to the missing and irregular transcripts" (People v Meyers, 191 AD3d 1406, 1406 [4th Dept 2021]).

Supreme Court held a four-day reconstruction hearing, for which the Court appointed a special prosecutor (disqualifying the District Attorney's office) FN1 and at which Mr. Meyers was represented by new counsel. The reconstruction court heard testimony from the trial judge who presided over the case, that judge's confidential law clerk, the prosecutors and defense attorneys, and two court clerks. The original trial judge had taken notes at each stage of the trial, including notes on, inter alia, the testimony of each witness, objections lodged and the opening and [*2]closing statements, and those notes were admitted as an exhibit along with a challenge sheet from jury selection, the prosecutor's jury charge notes and the verdict sheet. Each witness was examined by both the special prosecutor and Mr. Meyers's counsel. At the conclusion of the hearing, the reconstruction court made no new factual findings of its own but transmitted the new transcript and exhibits to the Appellate Division.

The Appellate Division held the record on appeal was adequate and affirmed Mr. Meyers's conviction (People v Meyers, 236 AD3d 1499, 1500 [4th Dept 2025]). The Court held that Mr. Meyers had failed to rebut the presumption of regularity and there was no due process violation arising from the way that either the reconstruction hearing or the original trial was conducted (id. at 1504). The Court rejected the remainder of Mr. Meyers's substantive contentions arising from his original trial (id. at 1505-1506). The dissenting Justice granted Mr. Meyers leave to appeal to this Court.

II.

The first question is whether, given the condition of the trial record resulting from the stenographer's malfeasance, the Appellate Division erred by ordering a reconstruction hearing rather than summarily reversing and ordering a new trial. The Appellate Division's decision was proper.

A defendant has a "fundamental right to appellate review of a criminal conviction" (People v Yavru-Sakuk, 98 NY2d 56, 59 [2002]; People v Rivera, 39 NY2d 519, 522 [1976]). We begin every case with a presumption of regularity (People v Velasquez, 1 NY3d 44, 48 [2003]), which requires us to presume that judicial proceedings were conducted in accordance with law. The loss of a stenographic record, "standing by itself, will not rebut that presumption" so long as the defendant is not prejudiced (People v Harrison, 85 NY2d 794, 796 [1995]; People v Parris, 4 NY3d 41, 44 [2004] ["a loss of reporter's minutes is rarely sufficient reason in itself for reversing a conviction"]). No prejudice results "if the record can be accurately reconstructed" (Harrison, 85 NY2d at 796). To obtain summary reversal based on a record defect, a defendant bears the "burden to establish that a reconstruction hearing would be futile" (Yavru-Sakuk, 98 NY2d at 61-62). That is, a defendant must demonstrate that "alternative methods to provide an adequate record" will not avail to "satisfactorily demonstrate whether genuine appealable and reviewable issues do or do not exist" (People v Glass, 43 NY2d 283, 286 [1977]).

For instance, in Rivera, no transcript of the trial minutes or sentencing could be found, and we summarily reversed where it was clear that the record could not be reconstructed due to the death of the trial judge, the passage of 23 years since the trial, the defendant's "complete retrograde amnesia" and the fact that defendant, who had "no knowledge of English at all," was never provided intelligent information as to what was happening during his own trial (39 NY2d at 523-524). Similarly, if the proof at trial is "so wholly or largely dependent upon documentary evidence that there would be no proof and could be no judgment without the [evidence]," summary reversal may be appropriate when that evidence cannot be reconstructed (People v Strollo, 191 NY 42, 66 [1908]). An important element of the prejudice analysis is whether the judge, lawyers and court staff from the trial are "willing and capable of aiding in the reconstruction of a substitute record" (Glass, 43 NY2d at 286).

Mr. Meyers failed to establish that a reconstruction hearing would have been futile. The relatively short time between the trial and the reconstruction hearing, coupled with the full participation of the relevant actors from the original trial—including his own defense attorneys—indicates the contrary was true. No trial exhibits, including the video and cell phone records showing, inter alia, Mr. and Mrs. Meyers making several trips to Mr. O'Dell's home immediately before the fire and removing bags of materials from his home, followed by video showing Mrs. Meyers carrying a torch into his home immediately before the fire started, were lost.

Mr. Meyers claims that the state of the record following his trial was so deficient that a reconstruction hearing conducted principally through the testimony of involved parties could not possibly cure the record adequately enough to protect his right to appeal. But Rivera squarely forecloses his argument; there, although the entire trial transcript was irrecoverable, summary reversal was appropriate principally because a lack of alternative sources—namely, the testimony of the defendant and the trial judge—made it "impossible in this case either to establish that there were or were not in fact [appealable] issues, or, if there were, to present them on appeal" (Rivera, 39 NY2d at 524). Here, by contrast, most of the trial was transcribed and available, and the reconstruction hearing included testimony from the trial judge and his confidential law clerk, two court clerks, the trial prosecutors and the defense attorneys at trial for [*3]Mr. Meyers. The reconstruction court admitted 124 pages of detailed notes taken by the judge during the course of the criminal trial, the challenge sheet from trial, the prosecutor's jury charge notes, jury selection notes by the prosecutor and the verdict sheet FN2. Even if those sources did not "precisely duplicat[e] the missing minutes," what matters is that Mr. Meyers failed to show those sources could not "satisfactorily demonstrate whether genuine appealable and reviewable issues do or do not exist" (Glass, 43 NY2d at 286).

Relatedly, Mr. Meyers also argues that ordering the reconstruction hearing made it impossible for him to mount a weight-of-the-evidence claim, because summaries of the proceedings based on testimony of the judges, attorneys and public officials involved cannot form a sufficient basis for weight-of-the-evidence review. However, Mr. Meyers points to no specific witness testimony or exhibit which he could not sufficiently reconstruct on account of defects in the record; nor has he shown that any such testimony was favorable to him. The trial exhibits and the significant parts of the trial testimony that did not require reconstruction show an overwhelming amount of evidence of his guilt, and the reconstructed portions provide no basis to believe that Mr. Meyers had any possibility of prevailing on a weight-of-the-evidence challenge (see Sage v Fairchild-Swearingen Corp., 70 NY2d 579, 588 [1987]).

III.

Mr. Meyers next contends that the reconstruction hearing failed to produce an adequate record for appeal. He contends that the record relied on by the Appellate Division, consisting of the uncertified, partial transcript, the reconstruction transcript and original trial exhibits, was inadequate to protect his right of appeal. We disagree.

To prevail on his claim, Mr. Meyers must overcome the presumption of regularity (supra, p 5-6). To establish the insufficiency of a reconstructed record, a defendant must identify (1) potential appealable and reviewable issues which (2) could not be adequately reviewed because of defects in the record (Parris, 4 NY3d at 46; see Glass, 43 NY2d at 286-287). Once the record has been reconstructed, the defendant must identify material appealable issues that cannot be reviewed because of deficiencies in the record. Although the People bear the burden of production during a reconstruction hearing—that is, the burden to provide the evidence to reconstruct the record—the burden to overcome the presumption of regularity rests with the defendant (Parris, 4 NY3d at 46).

Mr. Meyers failed to rebut the presumption of regularity. To begin, the great majority of testimony from the trial was transcribed. All the completely untranscribed proceedings concerned non-testimonial matters, such as jury selection, the preliminary jury instructions, opening statements, summations, the charge conference, jury charge and the verdict; Mr. Meyers asserts no appealable errors relating to those portions of the trial. Of those portions of witness testimony that the reporter recorded as "blah blah blah,"

"untranscribable," "(omitted)" or strings of unintelligible characters, the reconstruction hearing resulted in the recovery of the substance of the testimony of those witnesses. Mr. Meyers does not identify any specific potential appealable issues affected by the portions of the record that were reconstructed FN3. Instead of attempting to shoulder his [*4]burden to identify appealable issues that cannot be fairly resolved on the reconstructed record, Mr. Meyers argues that the amount of missing material made it impossible to reconstruct what was missing. But the loss of records—even an entire trial transcript—does not per se rebut the presumption of regularity (Harrison, 85 NY2d at 796). As we made clear in Rivera, "unless the [trial minutes] have become unavailable because of any active fault on the part of the People, it does not necessarily follow from the fact that their absence compels resort to a less perfect record, that the right to appeal must be deemed to be frustrated" (39 NY2d at 523). To the extent Mr. Meyers is arguing that he cannot identify any potentially appealable issues due to the extent of defects in the record, the active participation of his trial attorneys in the reconstruction hearing is vital to our conclusion: it provides significant assurance that, had there been material appealable issues that arose at the trial, counsel would recall them. Likewise, the trial judge's retention and production of his relatively detailed notes provides further assurance that, had significant appealable issues been raised at trial, the notes would likely have reflected them. Under these circumstances, Mr. Meyers's failure to identify appealable issues, despite a significant portion of the record that survived and the balance substantially reconstructed, makes clear that he has failed to rebut the presumption of regularity.

Mr. Meyers's remaining contentions with respect to the adequacy of the reconstructed record (including, for example, his contention that the transcript does not show the trial judge, lawyers or he himself was present at his criminal trial) are meritless.

IV.

Mr. Meyers raises several due process objections to the reconstruction hearing, none availing. First, he contends that the People's failure to provide his counsel with the original trial exhibits and the reconstruction court's refusal to order such disclosure deprived him of due process. However, rather than denying defendant access to all trial exhibits outright, the reconstruction court informed counsel that "[i]f there is an item that comes up during the hearing that you do not have, you think you need, you object, and it is appropriate, I will deal with it at the time." Counsel for Mr. Meyers never made such a request for any specific document during the hearing. Later in the reconstruction hearing, the People stated:

"[A]s far as discovery goes, your Honor, I mean, they are more than welcome to look at whatever I have here. There are no secrets, but I am not — I really don't want to go and photocopy all of the files. They have all that stuff. I mean, there's a banker's box of phone records, all the raw data from the phone records, and I believe that's been turned over. There's the grand jury testimony, all the police reports. I would imagine that was all turned over in discovery. So, I don't know what more I could give to counsel."

Counsel for Mr. Meyers did not dispute that characterization and declined the People's offer to review the documents in their possession. To the extent Mr. Meyers's claim is that he was prejudiced by not having access to some unspecified documents until the reconstruction hearing was underway, he made no request to adjourn the hearing to allow him time to review or copy exhibits or to move to recall any witness who had previously testified based on documents belatedly made available to him. The record does not reflect which, if any, specific trial exhibits Mr. Meyers's counsel lacked, which is a result of counsel's decision at the reconstruction hearing not to compare the exhibits in counsel's possession with those in the People's possession. That process, though perhaps not as helpful as the reconstruction court or People could have been, does not constitute a denial of due process.

Mr. Meyers's remaining due process objections with respect to the reconstruction hearing are without merit.

[*5]V.

Finally, Mr. Meyers lodges numerous complaints with respect to his trial. Principally, he argues that the People improperly intimidated his expert fire witness and counsel by raising concerns that the expert had broken the law by inspecting Mr. O'Dell's woodstove at police barracks without possessing a private investigator's license. The People moved to preclude the expert's testimony because, inter alia, the investigator had violated state law by obtaining the evidence. The People indicated that if the attorneys for Mr. Meyers called the witness, they could be indicted as accomplices. Mr. Meyers's counsel undertook to consider the issue overnight, and the next morning reported that he would not call the expert. Mr. Meyers's essential claim is that the threat to prosecute the expert witness, and possibly his attorneys, itself constituted a violation of due process.

We perceive no due process violation on the facts of this case. The attorneys for Mr. Meyers could have opposed the People's preclusion motion and obtained a judicial determination on the merits, which would have effectively vitiated the threat of prosecution, whatever the trial court decided. Had counsel opposed the preclusion motion and lost, appellate review would have been available, including reversal for a new trial if the facts warranted it. The availability of that process was sufficient, inasmuch as he could have obtained a judicial determination, but his counsel chose not to do so. No defect in the record appears to have affected the appeal of this asserted error, and Mr. Meyers has not claimed that any defect in the record has impaired his ability to press his appeal on this asserted error. Nor has Mr. Meyers raised, at any stage of the litigation, an ineffective assistance of counsel claim with respect to his counsel's decision to withdraw the expert witness instead of litigating the preclusion motion, and it is thus unpreserved (see Hecker v State of New York, 20 NY3d 1087, 1087-1088 [2013]). To the extent defense counsel's decision may have turned on extra-record facts, it would more appropriately be brought via CPL 440.10 in any event (see e.g. People v De Tore, 34 NY2d 199, 210 [1974]).

Mr. Meyers raises two further contentions with respect to his original trial. First, he claims his conviction was not based on legally sufficient evidence. The evidence against him, based on the People's expert's testimony, cell data and video showing multiple trips to and from Mr. O'Dell's home, and his financial interest in Mr. O'Dell's death, was overwhelming. Viewed in the light most favorable to the People, a rational trier of fact could easily conclude the elements of the crime were proven beyond a reasonable doubt (People v Cabey, 85 NY2d 417, 420 [1995]).

Second, Mr. Meyers claims the statements he made to investigators the day after the crime should have been suppressed because he was in custody when he gave statements to police at the site of the fire, in government vehicles and in his own home. That claim is unaffected by the transcript defects; the full Huntley hearing was transcribed by a different reporter and is available and unmarred. We review such a claim for record support (People v Cabrera, 41 NY3d 35, 52 [2023], citing People v Paulman, 5 NY3d 122, 129 [2005]). There is clear record support for County Court's determination that Mr. Meyers was not in custody.

Accordingly, the order of the Appellate Division should be affirmed.

Order affirmed. Opinion by Chief Judge Wilson. Judges Rivera, Garcia, Singas, Cannataro, Halligan and Mackey concur. Judge Troutman took no part.

Decided May 26, 2026

Footnotes

Footnote 1

During the appeal, and before the reconstruction hearing, the Steuben County District Attorney was ordered recused because one of Mr. Meyers's trial defense counsel had started working at that office. The reconstruction court appointed the Livingston County District Attorney as special prosecutor.

Footnote 2

Even the dissenting Justice concluded that the errors Mr. Meyers identified "could potentially be remedied by remittal for a new reconstruction hearing" (Meyers, 236 AD3d at 1507 [Whalen, P.J., dissenting]). Thus, the Appellate Division was unanimous in concluding that Mr. Meyers failed to meet his burden to show that a reconstruction hearing would be futile.

Footnote 3

Although the numerous "blah blah blahs" and other wholly inappropriate entries in the trial transcript are inexcusable, the substance of the affected sentences is often discernable on the face of the transcript. For example, in the following paragraph, the substance is quite clear despite the stenographer's transgressions: "A trial jury is composed of 12 people. In addition to the 12 jurors, we also, blah, blah, sworn in as a trial juror will serve as the jury's foreperson. You've heard reference to the fact that the defendant was indicted by a grand jury. This is not and must not be taken guilty you, blah, blah, trial jury must consider an indictment by, blah, blah, accused of a crime. Only you as members of the trial jury can determine guilt. A defendant is presumed innocent and until you (untranscribable) find him guilty."