■ LYDIA GUTIERREZ, Appellant, v CITY OF NEW YORK, Defendant, and RALPH LANGSAM & ASSOCIATES, Respondent. [613 NYS2d 627] —Order, Supreme Court, Bronx County (Lottie Wilkins, J.), entered on or about May 13, 1993, which denied plaintiff's motion to set aside the verdict as to both liability and damages, unanimously reversed on the law, without costs, and the matter is remanded to the IAS Court for a new trial on all issues.

On November 1, 1989, at approximately 5:00 P.M., plaintiff Lydia Gutierrez was returning home from a shopping trip for school supplies with her two daughters, aged 13 and 15. Plaintiff resided with her children and Ramon Cintron, allegedly her common law husband, in a basement apartment in the building located at 620 Trinity Avenue, Bronx, New York. The building was owned at all relevant times by defendant Ralph Langsam & Associates. Mr. Cintron had been hired two weeks before as the building's porter.

Plaintiff testified that upon reaching the side entrance that led to her apartment, one of her daughters rang the doorbell. As the door was being opened by a family friend who was visiting, plaintiff stepped down the one step into the entry way which led to both plaintiff's apartment and the boiler room and her entire right foot became caught in an uncovered drain hole causing her to fall. The entry way had a light in working order but was dark at the time of the accident. Plaintiff was subsequently transported to Lincoln Hospital by ambulance.

As the result of her fall, plaintiff's left ankle suffered a trimalleolar fracture, which required plaintiff to wear a full length cast for three months, and her right ankle sustained a

lateral malleolus fracture which was placed in a half-cast (to the knee) for one month. After her casts were removed, plaintiff began physical therapy at Lincoln Hospital, walked with a cane, and used an air splint on her left ankle. Two years subsequent to the accident, plaintiff, according to physical therapy records, walked with a mild limp to the left, used a cane at home and experienced pain on the side of her left ankle.

On direct examination, plaintiff testified primarily as to how the incident occurred and the resulting injuries. She also testified that she was unemployed on the date of the accident.

On cross-examination, defense counsel again brought out that plaintiff had not been working at the time of the incident and then was permitted, over objection, to elicit that plaintiff was receiving public assistance at the time of the accident and for the previous 20 years. Defense counsel, also over objection, went on to ask: what year plaintiff came to the "mainland", whether Mr. Cintron was the father of plaintiff's children and, upon receiving a negative answer, who the father of the children was, whether the children had different fathers, whether the children shared the same last name, whether plaintiff had been married to any of the fathers and whether or not Ms. Gutierrez had ever been married.

During summation, defense counsel tied in plaintiff's unwed status with her welfare status and stated: "The suit here is just by Lydia Gutierrez, there was no marriage there between Mr. Cintron, Mr. Cintron didn't come in to testify. You will have to judge what that relationship, why they weren't married, whether or not the fact that this woman was on public assistance was that one of the reasons. You have to judge the character like you would in any other case."

The jury subsequently returned a verdict which awarded the 43 year old plaintiff $10,500 for past pain and suffering and $30,000 for future pain and suffering (or approximately $1,000 for each year of plaintiff's statistical life expectancy at the time of the trial) upon a finding that defendant was 57% at fault and plaintiff was 43% at fault. The jury also awarded plaintiff $3,000 for past medical bills but nothing for future medical care.

Plaintiff thereafter moved to set aside the verdict asserting, *inter alia,* that the trial court erred in allowing the defense's inquiries into plaintiff's welfare status as well as the lineage and legitimacy of her children. The IAS Court denied the motion and held that plaintiff's counsel opened the door to

extensive cross-examination on these issues and that the totality of circumstances raised at the trial permitted the court to exercise its direction and allow the questioning. We disagree and reverse.

It is well settled that the permissible scope of cross-examination lies within the sound discretion of the trial court, whose rulings should not be disturbed absent an improvident exercise of that discretion (*People v Schwartzman,* 24 NY2d 241, 244, *cert denied* 396 US 846; *People v Sorge,* 301 NY 198). It is also clear that direct or re-direct examination may open the door to certain collateral matters which would otherwise be inadmissible (*see, People v Chaitin,* 61 NY2d 683, 684-685; *Halloran v Virginia Chems.,* 41 NY2d 386, 393; *Osnato v New York City Tr. Auth.,* 172 AD2d 597, 599).

Defense counsel's excursions into issues concerning plaintiff's welfare and family circumstances, however, were not only collateral but were pure attacks on character in general, were severely inflammatory, and were not directly responsive or relevant to any testimony that had been elicited on direct examination. Plaintiff's receipt of public assistance did not contradict anything plaintiff had said about working in the past, and further, plaintiff made no claim for diminution of earnings capacity. Moreover, absolutely no rationale whatsoever exists, and no door was opened, for defense counsel's repeated questions concerning the legitimacy of plaintiff's children, how many different fathers they had or what their last names were. Additional evidence of defense counsel's tactics was his questioning concerning plaintiff's arrival on the "mainland", an unnecessary prejudicial tack clearly designed to improperly influence the jury.

In sum, we conclude that the totality of defendant's line of questioning concerning plaintiff's welfare status and illegitimate children, and plaintiff's answers in response over objection were highly prejudicial to plaintiff's case requiring a new trial on all issues. Concur—Carro, J. P., Wallach, Ross, Rubin and Tom, JJ.