[857 NE2d 52, 823 NYS2d 757]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EGBERT GRANT, Appellant.

Argued September 13, 2006; decided October 17, 2006

## POINTS OF COUNSEL

*Office of the Appellate Defender,* New York City (*Daniel A. Warshawsky, Richard M. Greenberg* and *Saadia Aleem* of counsel), for appellant. Because the trial court's erroneous *Sandoval* ruling prevented Egbert Grant from testifying, in a case where Mr. Grant was the sole source of his defense, this Court must reverse Mr. Grant's conviction. (*People v Sandoval,* 34 NY2d 371; *People v Davis,* 44 NY2d 269; *People v Dokes,* 79 NY2d 656; *People v Mayrant,* 43 NY2d 236; *People v Bowles,* 132 AD2d 465; *People v Coe,* 95 AD2d 685; *People v Carmack,* 52 AD2d 264; *People v Pavao,* 59 NY2d 282; *People v Perez,* 246 AD2d 335; *People v Walker,* 83 NY2d 455.)

*Robert T. Johnson, District Attorney,* Bronx (*Na Na Park* and *Nancy D. Killian* of counsel), for respondent. I. Defendant failed to preserve his current constitutional claim. (*People v Sandoval,* 34 NY2d 371; *People v Dokes,* 79 NY2d 656; *People v Stephens,* 84 NY2d 990; *People v Iannelli,* 69 NY2d 684; *People v Kello,* 96 NY2d 740.) II. The trial court's *Sandoval* ruling did not constitute an abuse of discretion as a matter of law. (*People v Shields,* 46 NY2d 764; *People v Walker,* 83 NY2d 455; *People v Mattiace,* 77 NY2d 269; *People v Williams,* 56 NY2d 236; *People v Sando-*

*val,* 34 NY2d 371; *People v Carracedo,* 89 NY2d 1059; *People v Carpenito,* 80 NY2d 65; *People v Mayrant,* 43 NY2d 236; *People v Hayes,* 97 NY2d 203; *People v Brown,* 48 NY2d 921.) III. If the trial court's *Sandoval* ruling was erroneous, the error was harmless. (*People v Mitchell,* 209 AD2d 443; *People v Brown,* 84 AD2d 819; *People v Bowles,* 132 AD2d 465; *People v Williams,* 56 NY2d 236; *People v Shields,* 46 NY2d 764; *People v Davis,* 44 NY2d 269; *People v Mattiace,* 77 NY2d 269; *People v Crimmins,* 36 NY2d 230; *People v Kello,* 96 NY2d 740; *People v Hamlin,* 71 NY2d 750.)

## OPINION OF THE COURT

Chief Judge KAYE.

Defendant was convicted of multiple counts of criminal contempt in the first degree, based on charges that on May 12, 2002 (Mother's Day), he repeatedly went to the home of his ex-wife and their four children, and harassed them, in violation of an order of protection. The order mandated that defendant stay away from these named individuals, as well as from their home, school, business and place of employment. It further directed him to refrain from any contact with, or from assaulting, stalking, harassing, menacing or recklessly endangering, the five persons named in the order.

Prior to the commencement of his jury trial, the court ruled, under *People v Sandoval* (34 NY2d 371 [1974]), that should defendant testify, the People would be permitted to impeach him by mention of his six prior criminal-contempt convictions. Thereafter, his attorney informed the court that "due in part to the fact that his criminal background would be exposed if he does testify, he has chosen voluntarily not to testify." Upon its review of the *Sandoval* ruling, the Appellate Division concluded that the trial court had erred by permitting cross-examination as to all six of defendant's contempt convictions. Nevertheless, the Appellate Division upheld the conviction, determining the error to be harmless. We affirm.

Defendant argues that *Sandoval* error resulting in a defendant's decision not to testify can never be harmless. We disagree. Although we have not until today been squarely presented with the question, our precedents assume that harmless-error analysis applies. In *People v Williams* (56 NY2d 236 [1982]), for example, this Court overturned a conviction on the basis that the *Sandoval* error committed by the trial court was not harmless (*see also People v Shields,* 46 NY2d 764 [1978]

[upholding Appellate Division's determination of harmlessness of trial errors, including *Sandoval* error]).

██ We now hold explicitly what was implicit in *Williams* and *Shields*: *Sandoval* error is properly subject to harmless-error analysis. At the outset, we note that although defendant claims that his constitutional right to testify in his own behalf was violated by the court's *Sandoval* ruling, he never raised any constitutional claim before the trial court, thus failing to preserve this contention for our review. Accordingly, his current claim must be reviewed under the standard applicable to non-constitutional harmless error (*see People v Kello*, 96 NY2d 740, 743-744 [2001]). Under that standard, an error will be deemed harmless when the proof of guilt was overwhelming and there was no significant probability that the jury would have acquitted had the error not occurred (*see People v Crimmins*, 36 NY2d 230, 241-242 [1975]).

When an appellate court reviews the allowance as impeachment evidence of a defendant's prior convictions, the underlying issue with which to be concerned, as relevant here, is whether the apprehension of the introduction of evidence of the defendant's prior criminal, vicious or immoral conduct will "undesirably deter the defendant from taking the stand and thereby deny the jury or court significant material evidence" (*Sandoval*, 34 NY2d at 376).[1] The other consideration pertinent to an assessment of the prejudicial impact of admitting such evidence is, of course, whether the testimony to be elicited will "have a disproportionate and improper impact on the triers of fact" (*id.*).

██ If, in a particular case, the factfinder is deprived of no significant material evidence, then the defendant has not been denied a fair trial and reversal of the conviction would serve no jurisprudential purpose (*see People v Grant*, 45 NY2d 366, 378 [1978]). Assuming that the trial court here abused its discretion,[2] we agree with the Appellate Division that any error was harmless, since defendant's decision not to testify did not

---

1. A determination to allow cross-examination on prior criminal conduct merely deters, but does not prevent, a defendant from testifying (*see Ohler v United States*, 529 US 753, 759 [2000]).

2. "Commission of perjury or other crimes or acts of individual dishonesty, or untrustworthiness . . . will usually have a very material relevance, whenever committed" (*Sandoval*, 34 NY2d at 377). Plainly, the past violation of an order of protection, like prior perjury, bears heavily on the issue of veracity, since a person who willfully violates a judicial mandate after agreeing to

deprive the jury of any "critical information" (*Williams*, 56 NY2d at 241).

To be sure, harmless-error analysis in the context of *Sandoval* "does not involve speculation as to whether a defendant would have testified if the legal error had not occurred" (*Williams*, 56 NY2d at 240 [citations omitted]). Here, however, the error was harmless not because of speculation as to *whether* defendant would have testified, but because the record reflects that, assuming that he *did* testify, there was simply no possibility—let alone a significant probability—that his testimony would have led to an acquittal.

The evidence of defendant's guilt was overwhelming. Inasmuch as his knowledge of the terms of the order of protection was not in dispute at trial, the only conceivable issue for the jury to resolve was whether defendant in fact went to his family's home on May 12, 2002. His ex-wife and two of their teenaged children testified that defendant came to their home three times over the course of that day. While there, he repeatedly yelled and cursed at his ex-wife. Although defendant states in the abstract that he was "the sole source of his defense," he proffers no hint that he actually had any creditable defense, and offers no suggestion as to what it might have been.[3] Plainly, on this record, there is nothing to which he could legitimately have testified that might have been believed by a jury. Accordingly, allowing the introduction of all six of his prior criminal-contempt convictions to impeach his incredible testimony—as opposed to, say, limiting cross-examination to only two or three of them—could not possibly have affected the jury's verdict.

To expect a defendant to make some minimal proffer as to the nature or existence of a defense, in camera if necessary, is consistent with the principles underlying *Sandoval*, where we made clear that it is the defendant who has the burden "of demonstrating that the prejudicial effect of the admission of evidence [of prior convictions and misconduct] for impeachment purposes would so far outweigh the probative worth of such evidence on

comply with the court's order may logically be presumed to be similarly willing to violate his obligation to tell the truth despite his having made a promise to the court to testify honestly.

**3.** Although defendant originally indicated that he intended to introduce an alibi witness, the record reflects that he chose not to do so after that witness admitted to defense counsel that she had gone with defendant to the forbidden residence on the date in question and that her earlier claim to the prosecutor that defendant had never been there had been a lie.

the issue of credibility as to warrant its exclusion" (34 NY2d at 378).

A contrary result, moreover, would unfairly penalize criminal defendants who exercise their right to testify. Had defendant testified and been impeached by a prior conviction, the trial court's decision would indisputably be subject to harmless-error analysis, as defendant concedes. Under defendant's proposed rule, however, defendants who decline to testify after an erroneous *Sandoval* ruling must earn automatic reversal. In insisting that we cannot speculate as to what he might have said had he testified, defendant would afford a windfall to those defendants who have no viable defense and so could not possibly have made any creditable proffer before the trial court.

Accordingly, the order of the Appellate Division should be affirmed.

R.S. SMITH, J. (dissenting). I dissent reluctantly. The reasons that the majority gives for its holding are good ones, and I agree that the holding is supported, though not compelled, by our decisions in *People v Williams* (56 NY2d 236 [1982]) and *People v Shields* (46 NY2d 764 [1978]). But I cannot accept the proposition that an error that prevented a defendant from telling his side of the story to a jury can ever be "harmless."

The majority thinks the case against defendant was so "overwhelming" (majority op at 425) that nothing he could possibly have said would have led a jury to acquit him. I do not suggest that I disagree; but I do not think it is our place, or any court's place, to decide that question. To hold that interference with the defendant's right to testify may be overlooked because of his failure to make a "proffer" that the trial court finds "creditable" (majority op at 426) is to sanction a trespass by the court on the jury's province that is not consistent with the way our system works. (*Cf. Holmes v South Carolina*, 547 US 319, 126 S Ct 1727 [2006] [upholding a defendant's right to present defense based on third-party guilt, despite DNA evidence showing defendant committed the crime].)

Judges CIPARICK, ROSENBLATT, GRAFFEO and READ concur with Chief Judge KAYE; Judge R.S. SMITH dissents in a separate opinion; Judge PIGOTT taking no part.

Order affirmed.