Judgment, Supreme Court, New York County (Gregory Carro, J., at suppression hearing; Maxwell Wiley, J., at jury trial and sentence), rendered October 18, 2006, convicting defendant of murder in the second degree, attempted murder in the second degree, and assault in the second degree, and sentencing him, as a second violent felony offender, to a term of 25 years to life, consecutive to concurrent terms of 25 years and seven years, respectively, unanimously affirmed.
On January 5, 2005, defendant suggested to Chad Knight and *346 Jude Myrthil that they go to buy sneakers and other items at a particular store in Manhattan. Myrthil drove defendant’s car to West 27th Street and the three men went up to the second floor of a warehouse-type building containing several stores. Defendant purchased sneakers and boots from Ali Nasserdine and began to leave with Knight and Myrthil. However, he turned around and walked back to the store as Knight and Myrthil waited by the stairwell.
Ximena Rodriguez, an employee of Nasserdine, testified that a man fitting defendant’s description tried to return a pair of sneakers but Nasserdine refused, offering instead a store credit. Defendant became enraged, drew a gun and shot Nasserdine. Although Rodriguez did not see anyone with defendant when he returned to the store, Samer El-Nader, who worked at another store some 20 feet away, testified that Knight and Myrthil were about four feet away from defendant at the time of the shooting. El-Nader also testified that he thought Knight and Myrthil were with defendant but that they did not “do or say anything at all.” Rodriguez testified that the shooter stepped back in the direction of Knight and Myrthil before drawing the gun and then stepped back toward Nasserdine and shot him.
Knight testified he had not been paying much attention until defendant drew the gun. He claimed he was talking on his cell phone but did not recall with whom he had been speaking. In stark contrast to El-Nader’s testimony, however, Knight swore that he and Myrthil were approximately 14 feet away from defendant when defendant drew the gun. Nasserdine died from five gunshot wounds to the head and El-Nader was shot once in the back. Knight testified that when defendant fired the first shot, he and Myrthil ran down the stairs, out of the building and toward defendant’s car. He stated that although he and Myrthil did not want to accompany defendant, they did speak with defendant in his car before they took the subway back to the Bronx without him. Knight later gave a statement to the police but omitted any mention of meeting defendant and Myrthil at defendant’s car after the shooting.
A security guard in the lobby of the building testified that after hearing shots, he saw two black males run from the stairway toward the street. He heard two more shots and saw another black male exit the stairway and place a revolver in his waistband. He also testified that he thought the man with the gun caught up with the first two men and that all three walked toward Fifth Avenue.
One of the issues on this appeal concerns the denial of defendant’s request to instruct the jury to deliberate whether *347 Knight was an accomplice-in-fact whose testimony would thus require corroboration under CPL 60.22. We find that the court erred in declining to submit that issue to the jury. Such an instruction is properly denied only if there is no reasonable view of the evidence that the witness “participated in an offense based upon some of the same facts or conduct which make up the offense on trial” (People v Berger, 52 NY2d 214, 219 [1981]). “[I]f different inferences may reasonably be drawn from the proof regarding complicity, . . . the question should be left to the jury” (People v Basch, 36 NY2d 154, 157 [1975]).
Whether the foregoing testimony was sufficient to require an accomplice-in-fact instruction is an issue we need not resolve, for there was additional highly relevant evidence. The People elicited the testimony of an informant who testified that he had gotten to know defendant well while they were in prison. In essence, the informant testified that defendant had admitted his involvement in the crime as the shooter and provided various details regarding the aftermath of the crime, details the informant himself could not have known. More importantly for our purposes, however, the informant testified that defendant “told me that he did a robbery; that his mens put him down with it” and that he, defendant, had shot two individuals.
The statement by defendant that his “mens” had “put him down with” a robbery reasonably can mean that Knight and Myrthil had alerted defendant to a robbery opportunity or that they had accused him of robbery. It is enough, however, that a reasonable understanding of that statement is that Knight and Myrthil alerted defendant to this robbery opportunity and, viewed in conjunction with the other evidence, accompanied defendant and acted as his accomplices. Indeed, the People conceded as much at oral argument. Asked if there was a reasonable view of the statement that defendant was saying his “mens” had alerted him to this robbery scenario, the assistant district attorney responded, that, “Yes, you could look at it that way.” This answer reflects appropriate candor and not any imprudent concession.
However, we also find that under the applicable standard for nonconstitutional error, the refusal to give an accomplice-in-fact instruction was harmless because “the proof of guilt was overwhelming and there was no significant probability that the jury would have acquitted had the error not occurred” (People v Grant, 7 NY3d 421, 424 [2006]).* Here, defendant admitted his involvement in the crime as the shooter and related details of *348 the aftermath of the crime, as corroborated by evidence independent of Knight’s testimony. Moreover, there was a wealth of other evidence aside from Knight’s testimony, the cumulative effect of which was that the People provided overwhelming evidence satisfying New York’s corroboration requirement, which requires “only enough nonaccomplice evidence to assure that the accomplices have offered credible probative evidence” (People v Breland, 83 NY2d 286, 293 [1994]).
Defendant moved to suppress a showup identification as fruit of an allegedly unlawful arrest. Any error by the motion court in summarily denying the motion without granting a Dunaway hearing was harmless under the circumstances of the case. Defendant did not move to suppress Knight’s in-court identification, and would have had no basis upon which to do so, since Knight (the same companion defendant argued should have been the subject of an accomplice charge) was well acquainted with defendant. Thus, even if the court had granted defendant a Dunaway hearing, and had he prevailed at the hearing, his only gain would have been suppression of the showup itself, which added precious little to the People’s case.
Defendant’s challenges to the People’s summation are unpreserved and we decline to review them in the interest of justice. Were we to review those claims, we would find no basis for reversal (see People v Overlee, 236 AD2d 133, 141 [1997], lv denied 91 NY2d 976 [1998]; People v D'Alessandro, 184 AD2d 114, 118-119 [1992], lv denied 81 NY2d 884 [1993]). However, some comment is warranted concerning the prosecutor’s statement of personal outrage at arguments made by defense counsel on summation, where she had asserted that the prosecutors had both elicited the testimony from a witness that “they want[ed] to hear” and had failed to seek phone records that might have corroborated Knight’s claim that he was talking on his cell phone “because they don’t really want to know whether he really was on the phone.” The prosecutor responded in his summation: “I am outraged and insulted that [defense counsel] actually suggested this, that I have something to do with hiding evidence, in trying to frame an innocent man. That is an outrage.”
Without question, defense counsel was suggesting that the prosecutors were complicit in what amounted to an effort to *349 convict an innocent person. That suggestion invited a response, the terms of which otherwise would not be proper, by permitting the prosecutor to respond to the specter of prosecutorial misconduct injected into the case by defense counsel (see People v Marks, 6 NY2d 67, 77-78 [1959], cert denied 362 US 912 [I960]). The prosecutor thus could not be faulted if he had characterized as outrageous defense counsel’s effort to impugn his integrity in the course of advancing an argument based on rank speculation. Had he done so, the jury might well have inferred that he was outraged. But the expressed statement of his subjective state of outrage was not proper, albeit not rising to the level of reversible error.
We also reject defendant’s ineffective assistance of counsel claim (see People v Benevento, 91 NY2d 708, 713-714 [1998]; cf. Strickland v Washington, 466 US 668 [1984]).
Finally, we see no basis for reducing the sentences imposed. Concur—Saxe, J.E, Sweeny, McGuire and Freedman, JJ.

 Defendant never suggested at trial that there was a constitutional dimension to his claim that the issue of whether the witness Knight was an accom *348 plice should be submitted to the jury, and thus the appellate claim of constitutional error is not preserved for review (see People v Angelo, 88 NY2d 217, 222 [1996]). Moreover, it is meritless in any event as the Federal Constitution does not require corroboration of an accomplice’s testimony (see Caminetti v United States, 242 US 470, 495 [1917]).