[991 NE2d 698, 969 NYS2d 840]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NICHO-
LAS SANCHEZ, Appellant.

Argued April 30, 2013; decided June 4, 2013

## POINTS OF COUNSEL

*Office of the Appellate Defender*, New York City (*Richard M. Greenberg* and *Margaret E. Knight* of counsel), for appellant. I. Nicholas Sanchez was denied his constitutional right to the effective assistance of counsel where—in the absence of informed consent obtained following an inquiry by the trial court—the Legal Aid Society represented another suspect and, as a result of that conflict of interest, defense counsel did not seek to introduce favorable evidence and failed to fully investigate exculpatory evidence linking the other suspect to an individual whose fingerprints were found at the crime scene. (*People v McDonald*, 68 NY2d 1; *Glasser v United States*, 315 US 60; *People v Harris*, 99 NY2d 202; *People v Gomberg*, 38 NY2d 307; *People v Krausz*, 84 NY2d 953; *People v Whitley*, 14 AD3d 403; *United States v Fulton*, 5 F3d 605; *People v Longtin*, 92 NY2d 640; *People v Perez*, 70 NY2d 773; *People v Wilkins*, 28 NY2d 53.) II. Nicholas Sanchez's conviction must be reversed because the complainant's identification was improperly bolstered by police witnesses who testified that Mr. Sanchez was the person depicted in the crime scene photographs and repeated the complainant's prior description of the perpetrators. (*People v Russell*, 79 NY2d 1024; *People v Rivera*, 259 AD2d 316; *People v Harte*, 29 AD3d 475; *People v Narrod*, 23 AD3d 1061; *People v Pratt*, 266 AD2d 318; *People v Coleman*, 78 AD3d 457; *People v Morgan*, 214 AD2d 809; *People v Steward*, 72 AD3d 524; *People v Borgia*, 263 AD2d 553; *People v Jung Hing*, 212 NY 393.) III.

The prosecution's belated disclosure of favorable evidence that fingerprints were taken from the scene of the crime, one of which was later matched to a confessed robber, and that there existed another suspect constituted violations of *Brady v Maryland* (373 US 83 [1963]) and Criminal Procedure Law § 240.20, which require reversal because it negatively impacted upon the choice of defense and prevented a full investigation. (*People v Germeo*, 188 AD2d 1027; *People v Lyons*, 150 AD2d 804; *People v Williams*, 50 AD3d 1177; *United States v Bagley*, 473 US 667; *Berger v United States*, 295 US 78; *People v Steadman*, 82 NY2d 1; *Banks v Dretke*, 540 US 668; *Strickler v Greene*, 527 US 263; *People v Vilardi*, 76 NY2d 67; *Leka v Portuondo*, 257 F3d 89.) IV. The court erred in denying the motion to set aside the verdict where its decision was based on an incorrect evidentiary finding that Nicholas Sanchez's testimony about admissions by another suspect was inadmissible, and where it credited testimony that was implausible and flatly refuted by other credible witnesses. (*People v Salemi*, 309 NY 208; *People v Settles*, 46 NY2d 154; *Chambers v Mississippi*, 410 US 284.) V. Nicholas Sanchez was denied due process and a fair trial because he was identified based upon unduly suggestive identification procedures, including a photographic array where the fillers were older than Mr. Sanchez who is a light-skinned Hispanic man. (*Solomon v Smith*, 645 F2d 1179; *Neil v Biggers*, 409 US 188; *People v Chipp*, 75 NY2d 327; *Foster v California*, 394 US 440; *United States v Eltayib*, 88 F3d 157; *United States v Wade*, 388 US 218; *People v Gaddy*, 115 AD2d 658; *People v Burwell*, 26 NY2d 331; *People v Carolina*, 184 AD2d 520; *Raheem v Kelly*, 257 F3d 122.) VI. The prosecution's failure to preserve evidence necessary for effective appellate review requires reversal. (*People v Yavru-Sakuk*, 98 NY2d 56; *People v Harrison*, 85 NY2d 794; *People v Rivera*, 39 NY2d 519; *People v Jackson*, 98 NY2d 555.)

*Robert T. Johnson, District Attorney*, Bronx (*Noah J. Chamoy, Joseph N. Ferdenzi* and *Rafael Curbelo* of counsel), for respondent. I. The People proved defendant's guilt beyond a reasonable doubt by overwhelming evidence. II. Defense counsel, from the Legal Aid Society, did not suffer from a conflict of interest affecting the defense from the Legal Aid Society's prior representation of a suspected accomplice. (*Wood v Georgia*, 450 US 261; *Mickens v Taylor*, 535 US 162; *Cuyler v Sullivan*, 446 US 335; *People v Ennis*, 11 NY3d 403; *People v Harris*, 99 NY2d 202; *People v Berroa*, 99 NY2d 134; *People v Jordan*, 83 NY2d 785; *People v Abar*, 99 NY2d 406; *People v Ortiz*, 76 NY2d 652; *Strickland v Washington*, 466 US 668.) III. Supreme Court

exercised sound discretion in allowing detectives to identify defendant as the person depicted in the surveillance photographs and to recount the complainant's description of the perpetrator. (*People v Russell*, 165 AD2d 327, 79 NY2d 1024; *People v Rivera*, 259 AD2d 316; *People v Alvino*, 71 NY2d 233; *People v Lewis*, 69 NY2d 321; *Senecal v Drollette*, 304 NY 446; *People v Spinello*, 303 NY 193; *Ruloff v People*, 45 NY 213; *People v Byrnes*, 33 NY2d 343; *People v Magin*, 1 AD3d 1024; *People v Morgan*, 214 AD2d 809.) IV. A postverdict CPL 330.30 (1) motion cannot preserve a challenge to the timing of the People's pretrial disclosures. (*Brady v Maryland*, 373 US 83; *People v Primo*, 96 NY2d 351; *People v Rogelio*, 79 NY2d 843; *People v Monserate*, 256 AD2d 15; *People v Albert*, 85 NY2d 851; *People v Gray*, 86 NY2d 10; *People v Martin*, 50 NY2d 1029; *People v Carter*, 63 NY2d 530; *People v Harris*, 98 NY2d 452; *People v Davidson*, 98 NY2d 738.) V. Supreme Court exercised sound discretion in rejecting defendant's newly discovered evidence claim on the grounds that there was no probability its admission would affect the verdict. (*People v Salemi*, 309 NY 208; *People v Crimmins*, 38 NY2d 407; *People v Smith*, 63 NY2d 41, 469 US 1227; *People v Settles*, 46 NY2d 154; *People v Bedi*, 299 AD2d 556; *People v Brown*, 126 AD2d 898; *People v Ausserau*, 77 AD2d 152; *People v Ayala*, 142 AD2d 147, 75 NY2d 422; *People v Macana*, 84 NY2d 173.) VI. Substantial record support exists for Supreme Court's finding that the photo array and lineup procedures were not unduly suggestive. (*People v Jackson*, 98 NY2d 555; *People v McBride*, 14 NY3d 440; *People v Jones*, 2 NY3d 235; *People v Chipp*, 75 NY2d 327; *Neil v Biggers*, 409 US 188; *Simmons v United States*, 390 US 377; *United States v Wade*, 388 US 218; *People v Hernandez*, 70 NY2d 833; *People v Banks*, 276 AD2d 294; *People v Galletti*, 239 AD2d 598.) VII. Ample record support exists for the Appellate Division's finding that the absence of some of the exhibits of surveillance photographs did not impede effective appellate review. (*People v Yavru-Sakuk*, 98 NY2d 56; *People v Glass*, 43 NY2d 283; *People v Jackson*, 98 NY2d 555; *People v Parris*, 4 NY3d 41; *People v Rivera*, 39 NY2d 519; *People v Melendez*, 71 AD3d 530, 16 NY3d 869; *People v Bleakley*, 69 NY2d 490.)

### OPINION OF THE COURT

Graffeo, J.

In this case we consider whether defendant has adequately demonstrated that he was deprived of meaningful legal representation based on defense counsel's alleged conflict of interest.

On this record, we hold that defendant has not sustained his burden of establishing ineffectiveness, but that he is not precluded from raising this issue in a CPL article 440 proceeding that would permit further factual development of the circumstances pertaining to the claimed conflict.

## I

One evening in December 2004, Freddy Penalo was working as a taxi driver when he received a call to pick up passengers at a certain location in the Bronx. When he arrived, two young men approached his taxi and asked to be driven to West 233rd Street. Once in the vehicle, Penalo spoke to the men in the rear seat and observed them in the rearview mirror during the 10 to 12 minute trip.

When the taxi was in the vicinity of the destination, one passenger grabbed Penalo, announced a robbery and displayed a handgun. He ordered Penalo to turn over his cash, jewelry and cell phone. The other passenger told the gunman to kill Penalo, but the initial aggressor assured Penalo that he would not be murdered if he gave all of his money to them, which he did. Penalo was then pulled out of the taxi and the men drove away in the vehicle.

The police found the taxi parked near 3460 Bailey Avenue. They discovered that a "taxi cam" inside the vehicle had taken photographs during the robbery. Penalo gave descriptions to the police, stating that the two assailants were Hispanic men, about 20 years old, approximately five feet, eight inches tall and weighed 150 pounds and 160 pounds, respectively. The police also dusted the vehicle for fingerprints.

An investigating detective printed the taxi cam photographs and recognized one of the rear-seat passengers as defendant Nicholas Sanchez, who had been the victim in an earlier case the detective had worked. Another detective who viewed the photographs also identified defendant as someone he had interacted with in the neighborhood during the preceding five years. The officers eventually located defendant at 3340 Bailey Avenue—less than a block from where the taxi had been abandoned—and they took defendant's photograph. That photograph was included in a photo array that Penalo reviewed and he identified defendant as the man with the gun in his cab. After Penalo subsequently selected defendant in a lineup, defendant was arrested for the robbery. He told the police that he was 20 years old, five feet, six inches tall and weighed 160 pounds.

Attorney Charles Ippolito, from the Legal Aid Society, represented defendant at trial. During jury selection, the People informed defense counsel that a fingerprint found in the taxi matched another person involved in a sealed criminal case. Supreme Court issued an order unsealing the file and the People revealed that the fingerprint was attributed to Elvis Montero. The People also gave defense counsel a copy of a detective's report memorializing a statement from defendant's brother, who indicated that he heard a rumor that the taxi robbery had been committed by "Macho" (also known as Franklin DeJesus). Defense counsel received photographs of Montero and was told that he had been arrested for a robbery in the Bronx two months after the crime involving Penalo, but that Montero had jumped bail.

Prior to opening statements, defense counsel alerted the court to a possible conflict of interest. Legal Aid had represented DeJesus in an unrelated robbery case that ended in an acquittal. Based on certain "privileged information," Legal Aid believed that there was some connection between Montero and DeJesus. After internal discussions, defense counsel advised the trial judge that Legal Aid had concluded that "there is no conflict regarding the issue surrounding Mr. Montero" and that a conflict of interest would arise only if DeJesus had to be mentioned during defendant's trial. Defense counsel stated that this would not be necessary for "evidentiary reasons and for just reasons related to common sense . . . since there is no physical evidence connecting [DeJesus] to this crime." He further indicated that although Legal Aid recognized "the possibility of [a] potential for conflict," it was "not necessarily" an actual one and, therefore, the defense was "not asking the Court to act on this" since counsel wanted to avoid "going into" DeJesus as the possible unapprehended perpetrator in order to prevent a conflict or a mistrial. Counsel remarked that the matter had been discussed with defendant and the defense was "ready to proceed" with the trial. The prosecutor commented that the People had "no information about this Mr. DeJesus" and any link he had to the case was "all based on speculation."

During the trial, Penalo identified defendant as the gunman. The two detectives testified over defendant's objection that they had recognized defendant from the taxi cam photographs and that defendant had gained weight since his arrest. The defense strategy was to establish an alibi for defendant and present evidence to support the theory that Montero was the actual

perpetrator. The jury ultimately found defendant guilty of first-degree robbery.

After defendant's conviction, Legal Aid moved to set aside the verdict on various grounds, including newly discovered evidence consisting of DeJesus' alleged jailhouse confession to defendant. Legal Aid was then relieved as defendant's counsel and defendant was assigned a new attorney. Supreme Court ordered a hearing on DeJesus' purported confession, and defendant testified that DeJesus had admitted to him that he and Montero robbed Penalo. DeJesus, in contrast, acknowledged that he had a conversation with defendant while they were incarcerated, but denied that he confessed to the Penalo robbery or that he knew Montero. According to DeJesus, defendant attempted to bribe him into accepting responsibility for the crime. Defendant's former counsel also testified but did not claim personal knowledge of DeJesus' alleged admission. Supreme Court found DeJesus to be credible, denied the motion to set aside the verdict, and sentenced defendant to eight years of imprisonment and five years of postrelease supervision.

The Appellate Division affirmed (95 AD3d 241 [1st Dept 2012]). It determined that defendant had not been deprived of his right to effective legal assistance due to Legal Aid's dual representation of defendant and DeJesus because there was no conflict between their interests and, even if there were, it did not operate on the defense since defendant was able to present a third-party culpability theory focusing on Montero as the gunman. The dissenting Justice, who believed that defendant was entitled to a new trial because his Legal Aid attorney had a conflict of interest that affected the defense, granted defendant leave to appeal.

## II

Defendant contends that trial counsel was ineffective as a result of a conflict of interest stemming from Legal Aid's dual representation of defendant and DeJesus. According to defendant, this conflict of interest provides the only reasonable explanation for his attorney's failure to inform the jury about DeJesus' possible connection to the Penalo robbery. Defendant also maintains that the trial court had a duty to conduct a *Gomberg* inquiry (*People v Gomberg*, 38 NY2d 307 [1975]) in order to ensure that he was aware of the nature of the conflict and the risks associated with it.

The defendant bears the burden of establishing a denial of meaningful representation (*see e.g. People v Baker*, 14 NY3d

266, 270 [2010]). When such a claim is premised on a perceived conflict of interest, our precedent differentiates between actual and potential conflicts (*see People v Solomon*, 20 NY3d 91, 95 [2012]). An actual conflict exists if an attorney simultaneously represents clients whose interests are opposed (*see People v Prescott*, 21 NY3d 925, 927-928 [2013]; *People v Solomon*, 20 NY3d at 97) and, in such situations, reversal is required if the defendant does not waive the actual conflict (*see People v Solomon*, 20 NY3d at 96).

In contrast, a potential conflict that is not waived by the accused requires reversal only if it "operates" on or "affects" the defense (*see People v Abar*, 99 NY2d 406, 409 [2003])—i.e., the nature of the attorney-client relationship or underlying circumstances bear a " 'substantial relation to the conduct of the defense' " (*People v Ennis*, 11 NY3d 403, 410 [2008], quoting *People v Berroa*, 99 NY2d 134, 142 [2002]). The "requirement that a potential conflict have affected, or operated on, or borne a substantial relation to the conduct of the defense—three formulations of the same principle—is not a requirement that [the] defendant show specific prejudice" (*People v Ortiz*, 76 NY2d 652, 657 [1990]). Nevertheless, it is the defendant's "heavy burden" (*People v Jordan*, 83 NY2d 785, 787 [1994]) to show that a potential conflict actually operated on the defense (*see People v Ennis*, 11 NY3d at 411; *People v Harris*, 99 NY2d 202, 211 [2002]).

Here, defendant has established that a potential conflict of interest was apparent: Legal Aid represented both defendant and DeJesus in unrelated criminal matters; DeJesus had been named as a potential suspect during the police investigation; and Legal Aid possessed privileged information indicating that there was "some connection" between DeJesus and Montero, whose fingerprint had been discovered in the rear passenger area of Penalo's taxi. Although Legal Aid no longer represented DeJesus because he had been acquitted of his criminal charges, it owed him a continuing professional duty to maintain his confidences[1] and therefore raised the possibility of a conflict between its former and present clients—as defense counsel specifically recognized and attempted to avoid (*see People v Prescott*, 21 NY3d at 928, quoting *People v Ortiz*, 76 NY2d at 656).

Contrary to defendant's claim, however, the record does not establish as a matter of law that the potential conflict actually

---

1. Legal Aid supervisors did not allow attorney Ippolito to review its file on DeJesus.

affected the presentation of the defense or otherwise impaired counsel's performance. Defendant's trial lawyer correctly observed that there was no physical evidence that linked DeJesus to the Penalo robbery. Rather, his name had been provided to the police by defendant's brother based on an unsubstantiated neighborhood rumor. Counsel therefore reasonably concluded that DeJesus was unlikely to be a necessary component of the overall defense strategy due to evidentiary restrictions and "common sense."

Moreover, the extent to which DeJesus may have been relevant to the case was significantly diminished by Legal Aid's apparent belief that DeJesus may have been the unidentified accomplice who was sitting behind Penalo on the driver's side of the taxi. Defendant was accused of being the gunman who was depicted in the taxi cam photographs sitting in the rear passenger's side of the vehicle. Since Montero's fingerprint had been found on that side of the cab, the theory of the defense was that defendant had been misidentified as the person on the passenger side and that Montero was the true perpetrator. Defendant's attorney was able to present this theory to the jury without implicating DeJesus or acting adversely to his interests as a former client. Indeed, counsel mounted a cogent misidentification and third-party culpability defense consisting of expert testimony regarding the discovery of Montero's fingerprint in proximity to the area of the taxi where the People claimed defendant had been sitting; the taxi cam photographs; a photograph of Montero, which counsel asked the jury to compare to the taxi cam photos; and a stipulation that Montero confessed to a gunpoint robbery that he committed with two accomplices about seven weeks after Penalo had been robbed. Since this defense strategy did not betray any professional obligations owed to DeJesus or defendant, the record supports the view that the potential conflict was not realized in this case.[2] As a result, defendant has not adequately demonstrated that he received less than meaningful representation.

Our holding does not preclude defendant from raising this issue in a CPL article 440 proceeding in order to supplement the

---

**2.** The lack of a *Gomberg* inquiry does not amount to reversible error because defendant and DeJesus were not codefendants being simultaneously represented by Legal Aid, defense counsel stated that the matter had been explained to defendant and the court was told that it was not being asked to take any action (*see e.g. People v Jordan*, 83 NY2d at 787-788; *People v McDonald*, 68 NY2d 1, 9 [1986]; *People v Macerola*, 47 NY2d 257, 264 [1979]).

record with additional facts to bolster his contention that the potential conflict of interest affected the presentation of the defense (*see e.g. People v Konstantinides*, 14 NY3d 1, 12-13 n 4 [2009]).

## III

Defendant's remaining contentions do not require extended discussion. It was not an abuse of discretion to allow the detectives to state their beliefs that defendant was depicted in the taxi cam photographs because it was undisputed that his appearance had changed since the robbery occurred (*see generally People v Russell*, 79 NY2d 1024, 1025 [1992]) and the trial court issued appropriate limiting instructions to the jury. Defendant received the remedy he requested after the People disclosed the Montero fingerprint evidence on the eve of trial and he had a reasonable opportunity to use it as part of his defense (*see People v Cortijo*, 70 NY2d 868, 870 [1987]). Defendant is not entitled to relief on his challenge to the denial of the motion for a new trial on the basis of newly discovered evidence (*see People v Crimmins*, 38 NY2d 407, 415 [1975]). And there is support in the record for the finding that the identification procedures were not unduly suggestive (*see People v McBride*, 14 NY3d 440, 448 [2010]).

. . .

Accordingly, the order of the Appellate Division should be affirmed.

Chief Judge LIPPMAN and Judges READ, SMITH, PIGOTT and RIVERA concur; Judge ABDUS-SALAAM taking no part.

Order affirmed.